# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| DANIEL TAUBENFELD and RAIZEL TAUBENFELD, individually and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| AON CORPORATION, PATRICK G. RYAN and HARVEY N. MEDVIN, | ) ) ) |
| Defendants. | ) ) ) ) |

**DOCKETED**

**JUL 2 8 2004**

# FILED

No. 02 CV 5631 2 9 2004

**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

*JURY TRIAL DEMANDED*

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S COUNSEL'S APPLICATION FOR AN AWARD
## OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

<table>
<tr><td>

**SCHIFFRIN & BARROWAY, LLP**
David Kessler
Andrew L. Zivitz
Kay E. Sickles
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

*Plaintiffs' Lead Counsel*

</td><td>

**MILLER FAUCHER AND CAFFERTY LLP**
Marvin A. Miller
30 North LaSalle Street, Suite 3200
Chicago, IL 60602
(312) 782-4880

*Plaintiffs' Liaison Counsel*

</td></tr>
</table>

Dated: July 22, 2004

## TABLE OF CONTENTS

I.     STATEMENT OF THE ISSUES .................................................................. 1

II.    SUMMARY OF THE ARGUMENT ......................................................... 1

III.   AWARD OF ATTORNEYS' FEES ......................................................... 3

     A.    A Reasonable Percentage of the Fund Recovered
           Is an Appropriate Basis on Which to Award
           Attorneys' Fees in this Common Fund Case............................... 3

     B.    The Standard for Approval of Attorneys'
           Fees in the Seventh Circuit ....................................................... 4

     C.    The 30% Award Requested by Petitioners
           Is Fair and Reasonable................................................................ 5

          1.  Plaintiffs' Counsel's Fee Request is Fair and
              Reasonable as Courts Commonly Award 30% of
              the Fund in Complex Class Action Settlements.................. 6

          2.  An Analysis of the Factors Considered by Courts in
              the Seventh Circuit Supports the Conclusion that
              Plaintiffs' Counsel's Fee Request is Fair and
              Reasonable ........................................................................ 8

              a.  Plaintiffs' Counsel Undertook This Risky
                  Litigation on a Contingent Fee Basis........................... 8

              b.  Plaintiffs Faced a Substantial Risk to Proving
                  Liability in this Complex Action ................................ 9

               c.  Plaintiffs Faced Substantial Risks of Establishing
                  Damages in this Complex Securities
                  Class Action................................................................ 11

              d.  The Quality of the Service Rendered
                  by Plaintiffs' Counsel.................................................. 12

              e.  The Benefit Derived by the Class ................................. 14

              f.  The Public Service Aspects of the Case....................... 16

              g.  How Far the Litigation has Proceeded ......................... 17

i

IV.     PLAINTIFFS' COUNSEL ARE ENTITLED TO BE REIMBURSED
        FOR THEIR REASONABLE LITIGATION EXPENSES ................................... 18

V.      CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

## CASES

*In re Aetna*, No. 1219, 2001 U.S. Dist. LEXIS 68
(E.D. Pa. Jan. 4, 2001) ......................................................................................... 12, 13

*Alvarado v. Memphis-Shelby County Airport Authority*,
No. 99-5159, *et al.*, 2000 U.S App. LEXIS 21259
(6th Cir. Aug. 15, 2000) ...................................................................................... 11

*In re AremiSoft Corp.*, 210 F.R.D. 109 (D.N.J. 2002) ..................................................... 12

*In re Art Materials Antitrust Lit.*, 1984-1 Trade Cas.
(CCH) ¶65,815 (N.D. Ohio 1983) ........................................................................ 16

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................................ 4

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................. 3

*Cenco Inc. Sec. Litig.*, 519 F. Supp. 322 (N.D. Ill. 1981) ............................................... 8

*Central R. R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) ........................................ 3, 4

*In re Cincinnati Gas & Electric Co. Sec. Litig.*,
643 F. Supp. 148 (S.D. Ohio 1986) ....................................................................... 8

*In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) ................................. 4, 5, 18

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136
(E.D. Pa. 2000) ...................................................................................................... 6

*Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298
(7th Cir. 1985) ................................................................................................. 14, 17

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ....................................................... 16

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ...................................................... 9, 10

*In re F & M Distrib. Sec. Litig.*, No. 95-CV-71778-DT,
1999 U.S. Dist. LEXIS 11090 (E.D. Mich. June 29, 1999) ................................... 6, 16

*Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560
(7th Cir. 1994) ............................................................................................ 4, 8, 10,

*In re General Public Utilities Sec. Lit.*, [1983-84 Transfer Binder],
Fed. Sec.L.Rep. (CCH) ¶ 99 (D.N.J. 1983) ...................................................16

*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996)
(Williams, J.) *aff'd*, 160 F.3d 361
(7th Cir. 1998) (receivership case) ..........................................................4, 5, 7, 8

*Goldsmith v. Technology Solutions Co.*, 92 C 4374,
1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) .............................4, 6, 7,14,16

*Great Neck Capital Appreciation Investment Partnership, LLP v.*
*Pricewaterhouse Coopers*, 212 F.R.D. 400
(E.D. Wis. 2002)......................................................................................4, 8, 16,18

*In re Greenwich Pharm. Sec. Litigation*, No. 92-3071,
1995 U.S. Dist. LEXIS 5717 (E.D. Pa. Apr. 27, 1995)....................................6

*Henry v. Sears, Roebuck & Co.*, 98 C 4110,
1999 U.S. Dist. LEXIS 13831 (N.D. Ill. August 27, 1999).............................12

*In re Ikon Office Solutions Sec. Litigation*,
194 F.R.D. 166, 194 (E.D. Pa. 2000) ..........................................9, 12, 13, 18

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) .............................................5

*In re Lithotripsy Antitrust Litigation*, No. 98 C 8394,
2000 U.S. Dist. LEXIS 8143 (N.D. Ill. June 12, 2000)....................................11

*In re Michael Milken & Assoc. Sec. Lit.*,
150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................9

*Peterson v. Arvida/Jmb Partners*, 92 C 7148,
1994 U.S. Dist. LEXIS 2109 (N.D. Ill February 25, 1994)....................................15, 17

*Phemister v. Harcourt Brace Jovanovich, Inc.*, No. 77 C 39,
1984 U.S. Dist. LEXIS 23595 (N.D. Ill. Sept. 14, 1984) ...............................4

*Prandini v. National Tea Co.*, 557 F.2d 1015 (3d Cir. 1977)..............................17

*In re Prudential Ins. Co. Am. Sales Practices Litig.*
*Agent Actions*, 148 F.3d 283 (3d Cir. 1998) .............................................5, 14

*In re Prudential Securities Inc. Limited Partnership Lit.*,
912 F.Supp. 97 (S.D.N.Y. 1996)....................................................................13

*Ressler v. Jacobson*, 149 F.R.D. 651 (M.D. Fla. 1992) ....................................16

*Retsky Family Ltd. Partnership v. PriceWaterhouse LLP*,
No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397
(N.D. Ill. Dec. 10, 2001). .................................................................................4, 7

*In re Safety Components Int'l Sec. Litig.*, No. 00-0082 (AJL),
2001 U.S. Dist. LEXIS 16670 (D.N.J. Sept. 27, 2001) ......................................6

*Sebo v. Rubenstein*, 188 F.R.D. 310 (N.D. Ill. 1999) ......................................13

*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) ..................................4

*Skelton v. General Motors Corp.*, 860 F.2d 250 (7th Cir. 1988),
*reh'g en banc denied*, 1989 U.S. App. LEXIS 648 (January 13, 1989) .......................17

*In re Smithkline Beckman Corp. Sec. Litigation*,
751 F.Supp. 525 (E.D. Pa. 1990) ........................................................................16

*Sprague v. Ticonic National Bank*, 307 U.S. 161 (1939) .................................3, 4

*Synthroid Mktg.*, 264 F.3d 722 (7th Cir 2001), *reh'g granted in part*,
*denied in part*, 201 F. Supp. 2d 861 (N.D. Ill. 2002) .........................................18

*In re Synthroid Mktg. Litig.*, 325 F.3d 974 (7th Cir. 2003) ...............................5

*In re Telectronics Pacing System Accufix Atrial "J" Leads
Products Liability Litigation*, 137 F.Supp.2d 1029
(S.D. Ohio 2001) ............................................................................................8, 9

*In re Telesphere International Inc. Sec. Lit.*,
753 F.Supp. 716 (N.D. Ill. 1990) .......................................................................13

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160 (S.D.N.Y. 1989) .......................................................................5

*Weiner v. Quaker Oats Co.*, 98 C 3123,
2000 U.S. Dist. LEXIS 16765 (N.D. Ill. Nov. 13, 2000) ...................................10

## UNPUBLISHED DECISIONS

*In re Caremark Int'l Sec. Litig.*, No. 94 C 4751
   (N.D. Ill. Dec. 15, 1997) (Plunkett, J.) .................................................................7

*Feldman v. Motorola, Inc.*, No. 90 C 5887
   (N.D. Ill. June 28, 1995) (Norgle, J.) ..................................................................7

*First Interstate Bank of Nevada, N.A. v. National*
   *Republic Bank of Chicago*, No. 80 C 6401
   (N.D. Ill. Feb 12, 1988) (Plunkett, J.)..................................................................7

*Hammond v. Hendrickson*, No. 85 C 9829
   (N.D. Ill. Nov. 20, 1992) (Aspen, J.)....................................................................7

*Liebhard v. Square D Co.*, No. 91 C 1103
   (N.D. Ill. June 6, 1993) (Plunkett).......................................................................7

*Long v. Trans World Airlines*, 1993 U.S. Dist. LEXIS 5063
   (N.D. Ill. Apr. 15, 1993) .....................................................................................7

*In re Mercury Fin. Co.*, No. 97 C 3035
   (N.D. Ill. July 6, 2001 and July 26, 2000) (Norgle, J.)........................................7

*In re Nuveen Fund Litig.*, No. 94 C 360
   (N.D. Ill. June 3, 1997) (Manning, J.) .................................................................7

*In Re Soybean Futures Litig.*, No. 89 C 7009
   (N.D. Ill. Nov. 27, 1996) (Norgle, J.)...................................................................7

*Wanninger v. SPNV Holdings*, No. 85 C 2081
   (N.D. Ill. May 20, 1993) (Marovich, J.) ...............................................................7

Schiffrin & Barroway, LLP, court-appointed Plaintiffs' Lead Counsel, on behalf of Plaintiffs'

Counsel and Lead Plaintiff Caldwell & Orkin, by and through its counsel ("Plaintiffs' Counsel"),

respectfully moves the Court for an award of attorneys' fees, including interest at the same rate

earned by the Class, of thirty percent (30%) of the $7,250,000 Gross Settlement Fund[1] and

reimbursement of $111,054.06[2] in expenses that Plaintiffs' Counsel incurred in successfully

prosecuting the claims in this action (the "Action").

## I.   STATEMENT OF THE ISSUES

The only issue in this Motion is whether the Court should grant Plaintiffs' Counsel's request

for attorneys' fees in the amount of 30% of the Gross Settlement Fund, plus expenses.

## II.   SUMMARY OF THE ARGUMENT

Plaintiffs' Counsel has obtained a settlement of Seven Million Two Hundred Fifty Thousand

Dollars ($7,250,000) in cash, plus interest, for the Class. *See* ¶ 3 of the Declaration of Kay Sickles

in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation,

and Attorney Fee and Expense Application (the "Sickles Decl."), submitted herewith. This is a

substantial result, particularly when viewed in light of the early stage of the litigation at which this

result has been achieved, and the considerable risks posed by continued litigation.[3]

---

[1] This Memorandum incorporates by reference the definitions in the Stipulation of Settlement (the "Stipulation") filed with the Court on or about April 13, 2004 and all terms used herein shall have the same meanings as set forth in the Stipulation.

[2] Of the expenses requested for reimbursement, $89,704.10 is attributable to work performed by Plaintiffs' Lead Counsel and Plaintiffs' Liaison Counsel, and is reflected in the Affidavit of Marvin Miller attached to the Sickles Decl. As Exh. 3. The remaining $21,349.96 is attributable to work performed by other Plaintiffs' Counsel. Supporting documentation for those remaining expenses will be produced upon the Court's request.

[3] *See* Sickles Decl., and Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (the "Settlement Memorandum"), submitted herewith.

That the case was able to settle for $7,250,000 at this early stage in the litigation is largely attributable to Plaintiffs' Counsel's litigation efforts. The work performed by Plaintiffs' Counsel included analyzing a multitude of public documents and documents from third parties; drafting and filing class action complaints; reviewing and analyzing approximately 4000 pages of documents produced by Defendants during confirmatory discovery; interviewing four witnesses produced by Defendants; and participating in complex settlement negotiations. As compensation for these efforts, Plaintiffs' Counsel respectfully requests that the Court award counsel fees representing thirty percent (30%) of the Gross Settlement Fund. The requested fee is certainly within the range of fees that is customarily sought by (and awarded to) experienced counsel in similar contingency fee litigation. *See* Section III(B), *infra*; Sickles Decl. ¶ 38. Additionally, as of the filing of this Memorandum, Plaintiffs' Counsel has received only one objection to the fee request. Pursuant to the Court's April 27, 2004 Order preliminarily approving the Settlement (the "Preliminary Approval Order"), approximately 208,541 Notices of Pendency and Proposed Settlement of Class Action and Settlement Hearing Thereon (the "Notice") were mailed to Class members, advising Class members that (i) Plaintiffs' Counsel intended to apply to the Court for an award of attorneys' fees representing up to 33 1/3% of the Gross Settlement Fund, and (ii) Plaintiffs' Counsel would seek reimbursement of their actual out-of-pocket expenses of approximately $100,000. The receipt of only one objection further supports the fairness and reasonableness of the attorneys' fee and expense reimbursement requests.[4]

---

[4]At this time, the Settlement Fund has already been established and, in accordance with the Stipulation, Defendants have caused $7,250,000 to be paid into an interest-bearing escrow account maintained on behalf of the Class. Sickles Decl. ¶ 3. In order to obtain the benefits of the Settlement Fund, upon Court approval of the Settlement, Class members must file a proof of claim and release form with the Settlement Administrator. At the conclusion of the claims filing

For the reasons set forth below, Plaintiffs' Counsel respectfully submits that the requested award of attorneys' fees and request for reimbursement of expenses by Plaintiffs' Counsel is fair and reasonable under the applicable legal standards and in light of the contingency risk undertaken, and should be awarded by the Court.

## III.  AWARD OF ATTORNEYS' FEES

### A.   A Reasonable Percentage Of The Fund Recovered Is An Appropriate Basis On Which To Award Attorneys' Fees In This Common Fund Case

For their efforts in creating a $7,250,000 all-cash Settlement Fund on behalf of the Class, Plaintiffs' Counsel is applying for a collective fee award on a percentage basis from the fund created. It has long been recognized that a person who maintains a suit that results in the creation of a benefit in which others have a common interest may obtain fees from that common benefit. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). *See also Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939); *Central R. R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885). Furthermore, the Supreme Court has consistently held that the percentage of the recovery approach is an appropriate methodology for awarding Plaintiffs' Counsel's fees in a common fund case. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("under the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class"); *Sprague*, 307 U.S. at 164-67; *Central R.R. & Banking Co.*, 113 U.S. at 123.

---

period, Plaintiffs' Counsel will move for an Order allowing the distribution of the Settlement Fund and, upon approval, the Settlement Fund, less any award of legal fees and expenses, notice, and administrative expenses (the "Net Settlement Fund"), will be distributed to Class members who have filed valid and timely proofs of claim.

3

**B.**     <u>The Standard For Approval Of Attorney's Fees In The Seventh Circuit</u>

Although district courts in the Seventh Circuit have discretion to award attorneys' fees based on either the percentage-of-the-fund method or the lodestar approach, *Great Neck Capital Appreciation Inv. P'ship, LLP v. PricewaterhouseCoopers,* 212 F.R.D. 400, 411 (E.D. Wis. 2002), the Seventh Circuit has strongly endorsed the percentage-of-the-fund method when awarding attorneys' fees from a common fund based on the rationale that the percentage-of-the-fund method most closely approximates the manner in which attorneys are compensated in the marketplace for these types of cases. *See In re Continental Ill. Sec. Litig.,* 962 F.2d 566, 572 (7th Cir. 1992) ("*Continental I*"); *Florin v. Nationsbank of Georgia, N.A.,* 34 F.3d 560, 566 (7th Cir. 1994); *Great Neck Capital,* 212 F.R.D. at 411; *see also Goldsmith v. Technology Solutions Co.,* No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *27 (N.D. Ill. Oct. 10, 1995).[5]

Furthermore, the Seventh Circuit has recognized "that there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration," and has expressed concerns with the complexity of applying the lodestar method. *Florin,* 34 F.3d at 566. *See also Continental I,* 962 F.2d at 573 (noting that it is easier to establish marketplace contingency fee percentages "than it would be to hassle over every item or category of hours and expense and what multiple to fix and so forth."); *Gaskill v. Gordon,* 942 F. Supp. 382, 386 (N.D. Ill. 1996) ("[T]he percentage of the fund method provides a more effective way of determining whether the

---

    [5]Courts recognize that the range of fees negotiated for contingent fee cases is 33-40%. *Retsky Family Ltd. P'ship v. PriceWaterhouse LLP,* No. 97 C 7694, 2001 U.S. Dist. LEXIS 20397, at *8 (N.D. Ill. Dec. 10, 2001). *See also Phemister v. Harcourt Brace Jovanovich, Inc.,* No. 77 C 39, 1984 U.S. Dist. LEXIS 23595, at *40 (N.D. Ill. Sept. 14, 1984) ("The percentages agreed on [in non-class litigation] vary, with one-third being particularly common."); *In re Shell Oil Refinery,* 155 F.R.D. 552, 571 (E.D. La. 1993) ("The customary contingency fee is between 33 1/3% and 40%.").

hours expended were reasonable."), *aff'd,* 160 F.3d 361 (7th Cir. 1998); *In re Synthroid Mktg. Litig.,* 325 F.3d 974, 979 (7th Cir. 2003) ("One advantage of the contingent fee is that the client (or the judge as protector of the class's interests) need not monitor how many hours the lawyers prudently devoted to the case. The client cares about the outcome alone."). In addition, "contingent fee uses private incentives [in the marketplace] rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Kirchoff v. Flynn,* 786 F.2d 320, 325 (7th Cir. 1986); *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.,* 724 F. Supp. 160, 170 (S.D.N.Y. 1989) (percentage-of-fund method is "bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation").[6] Therefore, Plaintiffs' Counsel respectfully submits that this Court should apply the percentage-of-the-fund method to determine the award of attorneys' fees.

## C.     The 30% Award Requested By Petitioners Is Fair And Reasonable

The 30% award requested is fair and reasonable when viewed in the context of fee awards in similar cases in the Seventh Circuit, this District, and in other jurisdictions across the country. It is also fair and reasonable when viewed in light of the factors generally considered by courts in this circuit to assess fee requests, the risks of proving liability and damages, the contingent fee risk,

---

[6]The "lodestar method," on the other hand, "is more commonly applied in statutory fee-shifting cases, and is designed to reward counsel for undertaking socially beneficial litigation in cases where the expected relief has a small enough monetary value that a percentage-of-recovery method would provide inadequate compensation." *In re Prudential Ins. Co. Am. Sales Practices Litig. Agent Actions,* 148 F.3d 283, 333 (3d Cir. 1998).

the quality of the legal services rendered, the benefit of the Settlement to the Class, the public service aspects of the case, and the stage of the litigation at which the case was settled. Therefore, as set forth below, Plaintiffs' Counsel respectfully submits that this Court should find that Plaintiffs' Counsel's request is fair and reasonable.

1. **Plaintiffs' Counsel's Fee Request Is Fair and Reasonable As Courts Commonly Award 30% of the Fund in Complex Class Action Settlements**

As attorneys' fees awarded in class actions often exceed 30% of the recovery, and 30% is commonly awarded in class action litigation in the Seventh Circuit, the request here is clearly within the range of fair and reasonable awards. Indeed, as Judge Guzman has observed, "where the percentage method is utilized, courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery." *Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *27. *See* Table 1 below, citing Northern District of Illinois decisions awarding attorneys' fees in the range of 30% to 39% of the recovery.[7] All of the unpublished opinions which are cited in the Table are attached to the Sickles Decl. as Exhibit 6.

---

[7]Plaintiffs' Counsel's request for 30% of the Settlement Fund is clearly within the range of fees awarded in similar cases in other jurisdictions as well. *See, e.g., In re Safety Components Int'l Sec. Litig.*, No. 00-0082 (AJL), 2001 U.S. Dist. LEXIS 16670, at *75-*76 (D.N.J. Sept. 27, 2001) (listing cases in Second and Third Circuit wherein 30-33% of Settlement Fund awarded); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 152 (E.D. Pa. 2000) (awarding 33 1/3% of settlement fund plus expenses); *In re Greenwich Pharm. Sec. Litig.*, No. 92-3071, 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa. Apr. 27, 1995) (finding 33-1/3% of settlement fund appropriate for settlement of approximately $4.4 million); *In re F & M Distrib. Sec. Litig.*, No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *21 (E.D. Mich. June 29, 1999) (awarding 30% of Settlement Fund as attorneys' fees).

## TABLE 1

### Northern District Illinois Percentage Fee Decisions

| Name of Case | % of Fund |
|---|---|
| *In re Mercury Fin. Co.*, No. 97 C 3035 (N.D. Ill. July 6, 2001 and July 26, 2000) (Norgle, J.) | 33.33 |
| *Retsky Family Ltd.P'ship v. PriceWaterhouse LLP*, 2001U.S. Dist. LEXIS 20397 (N.D. Ill. Dec. 10, 2001) (Darrah, J.) | 33.33 |
| *First Interstate Bank of Nevada, N.A. v. National Republic Bank of Chicago*, No. 80 C 6401 (N.D. Ill. Feb. 12, 1988) (Plunkett, J.) | 39.00 |
| *Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. Sept. 30, 1996) (Williams, J.), *aff'd,*, 160 F.3d 361 (7th Cir. 1998) (receivership case) | 38.00 |
| *In re Nuveen Fund Litig.*, No. 94 C 360 (N.D. Ill. June 3, 1997) (Manning, J.) | 33.33 |
| *In re Soybean Futures Litig.*, No. 89 C 7009 (N.D. Ill. Nov. 27, 1996) (Norgle, J.) | 33.33 |
| *Liebhard v. Square D Co.*, No. 91 C 1103 (N.D. Ill. Jun. 6, 1993) (Plunkett, J.) | 33.33 |
| *Goldsmith v. Technology Solutions, Co.*, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995) | 33.33 |
| *Hammond v. Hendrickson*, No. 85 C 9829 (N.D. Ill. Nov. 20, 1992) (Aspen, J.) | 33.33 |
| *In re Caremark Int'l Sec. Litig.*, No. 94 C 4751 (N.D. Ill. Dec. 15, 1997) (Plunkett, J.) | 33.00 |
| *Long v. Trans World Airlines*, 1993 U.S. Dist. LEXIS 5063 (N.D. Ill. Apr. 15, 1993) | 32.00 |
| *Wanninger v. SPNV Holdings*, No. 85 C 2081 (N.D. Ill. May 10, 1993) (Marovich, J.) | 32.00 |
| *Feldman v. Motorola, Inc.*, No. 90 C 5887 (N.D. Ill. June 28, 1995) (Norgle, J.) | 30.00 |

Therefore, this Court should find that Plaintiffs' Counsel's request for attorneys' fees of 30% of the Gross Settlement Fund is fair and reasonable.

7

2.      **An Analysis of the Factors Considered By Courts in the Seventh Circuit Supports the Conclusion That Plaintiffs' Counsel's Fee Request Is Fair and Reasonable**

As stated above, courts seek to determine a fee that is fair and reasonable. Some courts in the Seventh Circuit look to the following factors for assistance in this regard:

    (1)     the contingent nature of the case;
    (2)     the quality of the legal services rendered;
    (3)     the benefits derived by the class;
    (4)     the public service aspects of the case; and
    (5)     how far the litigation proceeded prior to settlement.

*Great Neck Capital,* 212 F.R.D. at 411.

As demonstrated below, consideration of the relevant factors clearly supports an award of 30% of the Settlement Fund to Plaintiffs' Counsel.

a.      **Plaintiffs' Counsel Undertook This Risky Litigation On A Contingent Fee Basis**

Courts have long recognized that the attorneys' contingent fee risk is an important factor in determining the fee award, and that this risk weighs in favor of Plaintiffs' Counsel's request. *See, e.g., Florin,* 34 F.3d at 565; *Gaskill,* 160 F.3d at 361 ("Because they shift part of the risk of loss from client to lawyer, contingent-fee contracts usually yield a larger fee in a successful case than an hourly fee would."); *Great Neck Capital,* 212 F.R.D. at 411 (citing, *Cenco Inc. Sec. Litig.,* 519 F. Supp. 322, 325 (N.D. Ill. 1981)). *See also In re Cincinnati Gas & Elec. Co. Sec. Litig.,* 643 F. Supp. 148, 151 (S.D. Ohio 1986) (highlighting contingent fee arrangement in granting lodestar multiplier); *In re Telectronics Pacing Sys. Accufix Atrial "J" Leads Prods. Liab. Litig.,* 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001) ("Contingency fee arrangements indicate that there is a certain degree of risk in obtaining a recovery") ("*Telectronics*"). In this case, Plaintiffs' Counsel undertook the litigation and

8

advanced the costs on a contingent basis, bearing the full risk of no recovery at all. They undertook this litigation knowing that they could easily litigate this case for four or five years, expend thousands of attorney hours, and hundreds of thousands of dollars for expenses, and then lose at summary judgment or at trial. "The risk of loss in any litigation is quite real." *In re Ikon Office Solutions Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (recognizing inherent, substantial risk entailed in any contingent fee litigation); *see also In re Michael Milken & Assoc. Sec. Lit.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993) ("victory -- even at the trial stage -- is not a guarantee of ultimate success").

### b. Plaintiffs Faced A Substantial Risk to Proving Liability in This Complex Action

"Most class actions are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *Telectronics*, 137 F. Supp. 2d at 1013 (citation omitted). Risk should be assessed as of the beginning of the case, not with the benefit of hindsight. *Florin*, 34 F.3d at 565.

The complexity of this case is considerable, and arises from both its substantive allegations, and the damage analyses that must be undertaken if Plaintiffs established the requisite liability elements. As detailed above and in the accompanying Settlement Memorandum, the Complaint alleges violations of Section 10(b) of the 1934 Act, Rule 10b-5 promulgated thereunder, and Section 20(a) of the 1934 Act. To prevail, the Class must establish: (i) that each defendant was responsible for an omission or a misstatement; (ii) that the false statement or omission was material; (iii) that the false statement or omission was made with scienter; and (iv) that the Class was damaged thereby. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976). However, Aon contends that: (a)

9

Defendants' statements were not materially false and misleading; (b) Defendants' statements were inactionable forward-looking statements and immaterial puffery; (c) that Defendants portrayed to the investing public an accurate view of Aon's finances; (d) that Aon undertook and implemented the Business Transformation Plan in good faith, a subject of the alleged false and misleading statements; (e) that Defendants did not conceal the adverse effects of Aon's pre-Class Period acquisitions; (f) that Aon conformed its revenue recognition policies to GAAP; (g) that Plaintiffs failed to adequately plead scienter; and (h) that the Individual Defendants were not motivated to commit fraud as they possessed large holdings in the Company. These defenses render the inherently difficult issues of materiality and scienter even more complex, and more difficult to prove. *See Weiner v. Quaker Oats Co.,* 98 C 3123, 2000 U.S. Dist. LEXIS 16765, at *24 (N.D. Ill. November 13, 2000) (noting difficulty of proving intent in securities action). Furthermore, even if these defenses are overcome, Plaintiff would still have to make the requisite showings of reliance and causation. *Ernst & Ernst v. Hochfelder,* at 193.

Ultimately, when making the decision whether to accept the Settlement, Plaintiffs also recognized that while they were confident of their ability to prove their claims and to effectively rebut Defendants' contentions, that a jury could place considerable weight upon the credibility and testimony of Defendants and the other witnesses they would present at trial. Plaintiffs considered that many of the witnesses Defendants likely would present, like the four witnesses Defendants produced during the confirmatory discovery process, are well respected business people, who would deny any knowledge of a fraud. As a result, Plaintiffs determined that the risks of proving liability warranted acceptance of the Settlement.

### c. Plaintiffs Faced Substantial Risks of Establishing Damages in This Complex Securities Class Action

Even if the Class were to overcome the aforementioned obstacles and successfully establish Defendants' liability, Plaintiffs would still need to establish and prove damages. *See, e.g., In re Lithotripsy Antitrust Litig.*, No. 98 C 8394, 2000 U.S. Dist. LEXIS 8143, at *4 (N.D. Ill. June 12, 2000) (considering difficulty of proving damages in assessment of settlement); *Alvarado v. Memphis-Shelby County Airport Auth.*, No. 99-5159, *et al.*, 2000 U.S App. LEXIS 21259, at *17 (6th Cir. Aug. 15, 2000) (highlighting risk of proving damages in assessing and approving settlement). Plaintiffs' Counsel has calculated what they believe the damages to be, however, this figure is based on *Plaintiffs' estimate for the total damages*. This figure assumes that every element of the Class' damages theory is accepted by the jury as being correct and recoverable. As such, its viability as an actual calculation for damages could be affected by many factors. Most significantly, the major stock decline during the Class Period that was associated with Defendants' curative disclosure was the August 7, 2002 decline, which was primarily associated with the announcement that the SEC was investigating the Company – an investigation that, for the most part, cleared Aon of any perceived wrong-doing. As a result, a large percentage of the Class could be found not to have suffered any damages. While Plaintiffs' Counsel believe that their experts would provide convincing expert testimony on these matters, the inevitable battle of the experts, with both Plaintiffs and Defendants presently their view as to whether and how much economic harm was sustained by the Class, is perhaps the most expensive, time-consuming, and burdensome aspect of this kind of litigation, and a battle in which no party is ever assured to prevail.

The complexity of this litigation poses a considerable and material risk that Plaintiffs would

11

not secure a recovery larger than the amount recovered for the Class through the Settlement. In fact, there is a significant risk here that Plaintiffs' Counsel could prosecute this case for several more years (through full discovery, including class briefing, expert discovery, summary judgment, trial and the inevitable appeals that would follow) and, at the end of the day, recover less than the proposed Settlement, or nothing, for the Class. *See Ikon*, 194 F.R.D. at 179 (noting where large sums of money are at issue, litigation guaranteed to be long, drawn-out, and any plaintiff verdict would be appealed by defendants, further extending litigation). *Accord In re Aetna*, No. 1219, 2001 U.S. Dist. LEXIS 68, at *22 (E.D. Pa. Jan. 4, 2001) ("The risk of delay could have deleterious effects on any future recovery"). Therefore, the Court should find that this factor weighs in favor of awarding Plaintiffs' Counsel the requested fees.

### d.  The Quality Of The Service Rendered By Plaintiffs' Counsel

Plaintiffs' Lead Counsel, Schiffrin & Barroway, and Plaintiffs' Liaison Counsel, Miller Faucher and Cafferty LLP, have national standing and are among the most experienced securities lawyers in the country. Few lawyers would have had the experience, professionalism, and knowledge to negotiate a Settlement of this magnitude at this early stage of the litigation without expending thousands of hours working towards a settlement of the same, or lesser, value. This Court has itself recognized that Schiffrin & Barroway litigates its cases with "professional skill and standing." *Henry v. Sears, Roebuck & Co.*, 98 C 4110, 1999 U.S. Dist. LEXIS 13831, *5-6 (N.D. Ill. August 27, 1999) (H. Leinenweber); *see also In re AremiSoft Corp.*, 210 F.R.D. 109, 121 (D.N.J. 2002) (noting Schiffrin & Barroway is highly experienced in securities class actions, and have demonstrated "their expertise in this matter via their ability to proceed efficiently and professionally . . ."). Courts in the Northern District have also recognized the competence and experience of

12

Plaintiffs' Liaison Counsel, Marvin Miller. *See Sebo v. Rubenstein*, 188 F.R.D. 310, 317 (N.D. Ill. 1999) (Lindberg, J.) ("Miller Faucher is experienced in antitrust class action litigation and defendants do not dispute that they are 'competent, qualified, experienced and able to vigorously conduct the litigation.'") (citation omitted); *In re Telesphere International Inc. Sec. Lit.*, 753 F. Supp. 716, 719 (N.D. Ill. 1990) (Shadur, J.) (Marvin A. Miller is "an experienced securities law class action litigator...who has 20 [now 34] years of practice under his belt. The Court has seen the quality of that lawyer's work in other litigation, and it is first-rate.").

Furthermore, Plaintiffs did not have the benefit of an ongoing SEC investigation, or predecessor litigation, on which to rely for assistance. *See Ikon*, 194 F.R.D. at 194 ("The settlement size is particularly noteworthy as class counsel did not have the benefit of an SEC or other regulatory agency investigation and so prosecuted the case without assistance"). Not only did Plaintiffs not receive any assistance from the SEC investigation, but ultimately, the investigation cleared Defendants of wrongdoing. As such, the Settlement is a direct result of Plaintiffs' Counsel's experience, reputation and ability as securities class action litigators.

The quality of opposing counsel is also important in evaluating the quality of services rendered by Plaintiffs' Counsel. *See, e.g., Aetna*, 2001 U.S. Dist. LEXIS 68, at *47; *Ikon*, 194 F.R.D. at 195; *In re Prudential Securities Inc. Limited Partnership Lit.*, 912 F. Supp. 97, 103 n.17 (S.D.N.Y. 1996). Defendants have been vigorously represented by counsel at Winston & Strawn, nationally recognized and extremely able defense counsel. The ability of Plaintiffs' Counsel to negotiate a very favorable Settlement for the Class in the face of such formidable legal opposition further evidences the superior quality of their work and supports the requested fee award.

13

**e.** **The Benefit Derived By The Class**

There is no question that in this case, the Class members will benefit greatly from the settlement that Plaintiffs' Counsel negotiated. A substantial settlement of $7,250,000 was reached, within less than two years of the filing of the Action, and is larger than the majority of securities class action settlements reached in 2003. As stated in a May 10, 2004 *The Wall Street Journal* article:

> The median settlement in 2003 totaled $9.5 million in cases that involved regulatory investigations, compared to $5.3 million in cases that didn't[.] (*citing* 2004 study by Cornerstone Research).

Plaintiffs in this case did not receive any assistance from the SEC investigation - an investigation that, for the most part, cleared Aon of any perceived wrong-doing. Therefore, this Settlement is far above the median settlement figure for 2003 of $5.3 million reported in the *Wall Street Journal* and this should be viewed favorably.

In addition, the timely receipt of settlement proceeds enhances the value of the Settlement to the Class. *See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 317 (3d Cir. 1998); *see also Goldsmith v. Technology Solutions Co.,* 92 C 4374, 1995 U.S. Dist. LEXIS 15093, at *14 (N.D. Ill. October 11, 1995) *(*noting "time value of money is another cost of continued litigation."*); Donovan v. Estate of Frank E. Fitzsimmons,*778 F.2d 298, 309 and n.3 (7th Cir. 1985) (noting that time value of money must be considered in evaluating settlement, and stating, "The $2 million settlement sum today is worth the same as $3.6 million recovery five years from now, . . ."). The recovery in this case would be considered a favorable result even three or four years down the road – for Plaintiffs' Counsel to achieve this result so quickly, honoring the time value of the Class members' money and sparing judicial resources, renders it an even more substantial result.

14

Furthermore, as set forth in the accompanying Settlement Memorandum, the $7,250,000 Settlement is a very favorable result when considering the legal obstacles which the Class would ultimately face – the Court's pending decision of the motion to dismiss, heavily contested class certification issues, summary judgment, and the necessity of proving scienter, damages and causation. Plaintiffs' Counsel recognized that proving liability against Defendants at trial would be risky due to the defenses available to Defendants. Sickles Decl. at ¶ 25. As stated by the Court in *Peterson v. Arvida/Jmb Partners*, No. 92 C 7148, 1994 U.S. Dist. LEXIS 2109 (N.D. Ill February 25, 1994), where the Settlement provided a recovery of only 2 cents on the dollar:

> What makes this fee petition so controversial is the fact that it seems, on its face, excessive when compared to the relatively low percentage amount of the lost investment that the plaintiff class is recovering. This is a legitimate concern. But it is a mistake to over emphasize this comparison. *The size of the settlement in this case is a function of the strength of the plaintiffs' case.*

*Id.* at *46. Further, as detailed above, there was a significant likelihood that, even if Defendants' liability could be established, the damages awarded would have been much lower than either the damages demanded by the Class, or the current Settlement. Sickles Decl. at ¶ 28. Accordingly, the Settlement is a very good recovery under any circumstances, and Plaintiffs' Counsel respectfully submits that in light of the substantial questions concerning damages and Defendants' liability, and considering the present and time value of money and the probability of lengthy litigation in the absence of a settlement, that the Settlement is substantial, and that this Court should award attorneys' fees in the amount of 30%.[8]

---

[8]Plaintiffs' Counsel has received only one objection to the request for attorneys' fees. *See* Objection of Hannah Feldman, attached to the Sickles Decl. as Exhibit 5. The receipt of only one objection is extraordinary in light of the fact that *208,541 Notice* were sent to Class Members, informing them that Plaintiffs' Counsel would apply for an award of attorneys' fees in

### f.  The Public Service Aspects Of The Case

Courts in the Seventh Circuit recognize that attorneys who produce substantial results in cases such as the case at bar should be rewarded to encourage the legal community to continue to undertake similar litigations. "The litigation pursued by plaintiffs was also socially beneficial because a securities fraud class action is a mechanism for holding corporations accountable for wrongdoing." *Great Neck Capital,* 212 F.R.D. at 412. *See also Goldsmith*, 1995 U.S. Dist. LEXIS 15093, at *31-*32 ("Private litigation aids the effective enforcement of the securities laws because private plaintiffs prosecute violations that might otherwise go undetected due to the SEC's limited resources.") (quoting, *In re Smithkline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990)); *F & M Distrib.*, 1999 U.S. Dist. LEXIS 11090, at *18 ("Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee. . . "); *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 161 (1974) (where small

---

an amount not to exceed thirty-three percent (33%) of the Settlement Fund, as well as reimbursement for actual expenses. Many courts have recognized that "[t]he lack of objection from members of the class is one of the most important factors" that courts consider when awarding attorneys' fees. *See In re General Public Utilities Sec. Lit.*, [1983-84 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 99,566 at p. 97,231-32 (D.N.J. 1983); *In re Art Materials Antitrust Lit.*, 1984-1 Trade Cas. (CCH) ¶65,815 at p. 67,417 (N.D. Ohio 1983); *Ressler v. Jacobson*, 149 F.R.D. 651, 656 (M.D. Fla. 1992). This objection, from Class Member Hannah Feldman, asserts that Plaintiffs' Counsel should not be awarded 33% of the Settlement Fund as attorneys' fees because of the size of the recovery. First, Plaintiffs' Counsel is requesting 30% of the Settlement Fund, rather than 33% of the Settlement Fund. Second, as set forth above, the caselaw reflects that even attorneys who obtain a settlement which returns only 2 cents on the dollar are to be rewarded where they faced substantial hurdles to proving liability, as in this case. *Peterson v. Arvida/Jmb Partners,* 1994 U.S. Dist. LEXIS 2109. Third, Ms. Feldman is incorrect in her assignment of the Lead Plaintiff role to the Taubenfelds, as the Lead Plaintiff in the Action is Caldwell & Orkin, which was appointed by the Court. Therefore, this Court should disregard Ms. Feldman's objection and should find that the Class Member reaction overwhelmingly supports Plaintiffs' Counsel's request for an award of 30% of the Settlement Fund.

16

claimants individually lack economic resources to vigorously litigate their rights, attorneys who take on class action matters enabling litigants to pool their claims provide huge service to judicial process). Absent the efforts of Plaintiffs' Counsel, the Class members would not have obtained relief for Defendants' alleged fraudulent activity – another factor militating in favor of granting Plaintiffs' Counsel's request for fees and costs.

### g. How Far The Litigation Has Proceeded

Where Plaintiffs' Counsel has negotiated a substantial Settlement for the Class, prior to full-blown discovery, the court should not penalize counsel for efficiently litigating a case and obtaining an early settlement. *See Skelton v. General Motors Corp.,* 860 F.2d 250, 258 (7th Cir. 1988), *reh'g en banc denied,* 1989 U.S. App. LEXIS 648 (January 13, 1989) (early settlement is insufficient reason to deny risk multiplier); *Donovan v. Estate of Frank E. Fitzsimmons,* 778 F.2d 298 (7th Cir. 1985) (noting that time value of money must be considered in evaluating settlement, and stating, "The $2 million settlement sum today is worth the same as $3.6 million recovery five years from now, . . ."). *see also Prandini v. National Tea Co.,* 557 F.2d 1015, 1019 n.5 (3d Cir. 1977) ("One thousand plodding hours may be far less productive than one imaginative, brilliant hour") (citation omitted); *Ikon,* 194 F.R.D. at 193 (larger recovery with fewer hours expended benefits all parties).

Furthermore, Plaintiff's Counsel has in fact completed a considerable amount of work in this Action. As detailed in the Sickles Declaration, prior to filing the initial complaint, Lead Plaintiff obtained and reviewed public filings, annual reports, and other public statements. Sickles Decl. ¶ 19. Thereafter, Lead Plaintiff undertook additional investigation and drafted and filed the Complaint. Defendants then filed their motions to dismiss, and Plaintiffs responded with their opposition to the motions. Before entering into the Stipulation of Settlement, Plaintiffs' Counsel

17

conducted additional discovery, including interviews of: (a) Ross Smith, President and CEO of

K&K, an Aon-owned company which underwrites entertainment insurance, since 2000; (b) Dan

Hunger, Aon's Controller since January 2004; (c) Bill Chromisky Vice President of SEC and internal

reporting for Aon; and (d) Bob Bondi, Managing Principle of Aon Client Services. Plaintiffs'

Counsel also analyzed approximately 4,000 pages of documents produced by Defendants. All such

materials were thoroughly reviewed and analyzed by Plaintiffs' Counsel. Finally, Plaintiffs' Counsel

engaged in lengthy and time-consuming settlement negotiations. Sickles Decl. ¶ 20. Therefore, this

Court should find that Plaintiffs' Counsel completed a substantial amount of discovery and should

view this factor as favoring Plaintiffs' Counsel's request for fees. *See e.g. Great Neck Capital*, at

412.

## IV.     PLAINTIFFS' COUNSEL ARE ENTITLED TO BE REIMBURSED FOR THEIR REASONABLE LITIGATION EXPENSES

Attorneys who create a common fund for the benefit of a class are entitled to reimbursement

of reasonable litigation expenses and costs from the fund. *See Great Neck Capital*, at 412

(recognizing that lawyers are typically reimbursed their expenses in market-rate contingency cases)

(citing, *Synthroid Mktg.* 264 F.3d 722; *In re Continental Illinois Sec. Litig.*, 962 F.2d at 570).

Plaintiffs' Counsel is seeking reimbursement of costs and expenses in an aggregate amount of

$111,054.06 for prosecuting this Action on behalf of the Class. As itemized in the Miller Affidavit

(attached to the Sickles Decl. as Exh. 3), these expenses were incurred on an ongoing basis for such

items as accounting and damage expert and consultant fees, photocopying of documents, online

research, messenger service, postage, express mail and next day delivery, long distance and facsimile

expenses, transportation, meals, travel, and other incidental expenses directly related to the

18

prosecution of this Action.

Accordingly, Plaintiffs' Counsel respectfully requests reimbursement for these reasonable expenses.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiffs' Counsel respectfully requests that the Court approve and enter an Order for an award of attorneys' fees in the amount of 30% of the Gross Settlement Fund and reimbursement of Plaintiffs' Counsel's expenses in the amount of $111,054.06, plus interest at the same rate as that earned by the Class.

Dated: July 22, 2004                    Respectfully submitted,

                                        **MILLER FAUCHER AND CAFFERTY LLP**
                                        Marvin A. Miller
                                        30 North LaSalle Street, Suite 3200
                                        Chicago, IL  60602
                                        (312) 782-4880

                                        *Plaintiffs' Liaison Counsel*


                                        **SCHIFFRIN & BARROWAY, LLP**
                                        David Kessler
                                        Andrew L. Zivitz
                                        Kay E. Sickles
                                        Three Bala Plaza East, Suite 400
                                        Bala Cynwyd, PA  19004
                                        (610) 667-7706

                                        *Plaintiffs' Lead Counsel*

19