## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DANIEL & RAIZEL TAUBENFELD JT, )
individually and on behalf of all others )
similarly situated, )
                      )
               Plaintiffs, )
                      )
               v. )       No. 02 C 5631
                      )
AON CORPORATION, PATRICK G. )       Judge Leinenweber
RYAN AND HARVEY N. MEDVIN, )
                      )
              Defendants. )

### NOTICE OF FILING

To:    Counsel on the Attached Service List

        PLEASE TAKE NOTICE that on Friday, July 22, 2004, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, 219 South Dearborn Street, Chicago, Illinois, the following documents:

*Motion for Final Approval of Class Action Settlement and Plan of Allocation*

*Memorandum of Law in Support of Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation*

*Memorandum of Law in Support of Plaintiff's Counsel's Application for an Award Of Attorneys' Fees and Reimbursement of Expenses*

*Declaration of Kay E. Sickles in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement, Plan of Allocation, and Attorneys' Fees and Expense Application*

a copy of which is hereby served upon you.

**FILED**

JUL 2 2 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Dated: July 22, 2004                    Respectfully submitted,


                                    By: _____

                                        Marvin A. Miller
                                        Jennifer W. Sprengel
                                        Lori A. Fanning
                                        **MILLER FAUCHER and CAFFERTY LLP**
                                        30 North LaSalle Street, Suite 3200
                                        Chicago, Illinois 60602
                                        (312) 782-4880

## CERTIFICATE OF SERVICE

I, Marvin A. Miller, one of plaintiffs' attorneys, hereby certify that I caused the following documents:

*Motion for Final Approval of Class Action Settlement and Plan of Allocation*

*Memorandum of Law in Support of Plaintiff's Motion for*
*Final Approval of Class Action Settlement and Plan of Allocation*

*Memorandum of Law in Support of*
*Plaintiff's Counsel's Application for an Award*
*Of Attorneys' Fees and Reimbursement of Expenses*

*Declaration of Kay E. Sickles in Support of Plaintiffs' Motion*
*for Final Approval of Class Action Settlement, Plan of Allocation,*
*and Attorneys' Fees and Expense Application*

to be served upon the following by hand delivery this 22nd day of July, 2004:

Dan K. Webb
Dane A. Drobny
**Winston & Strawn**
35 West Wacker Drive
Chicago, Illinois 60601

Marvin A. Miller

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

**FILED**

DANIEL TAUBENFELD and RAIZEL
TAUBENFELD, individually and on behalf of all
others similarly situated,

JUL 2 2 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Plaintiffs,

v.

No. 02 CV 5631

Judge Leinenweber

AON CORPORATION, PATRICK G. RYAN and
HARVEY N. MEDVIN,

Defendants.

***JURY TRIAL DEMANDED***

## DECLARATION OF KAY E. SICKLES IN SUPPORT OF
## PLAINTIFFS' MOTION FOR FINAL APPROVAL OF
## CLASS ACTION SETTLEMENT, PLAN OF ALLOCATION,
## AND ATTORNEYS' FEES AND EXPENSE APPLICATION

**SCHIFFRIN & BARROWAY, LLP**
David Kessler
Andrew Zivitz
Kay E. Sickles
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA 19004
(610) 667-7706

**Plaintiffs' Lead Counsel**

**MILLER FAUCHER and CAFFERTY, LLP**
Marvin Miller
30 North LaSalle Street
Chicago, Illinois 60602

**Plaintiffs' Liaison Counsel**

U.S. DISTRICT COURT
CLERK
04 JUL 22 PM 5: 14
RECEIVED FOR DOCKETING
ED-6



I, KAY SICKLES, respectfully submit this declaration (the "Declaration" or "Sickles Decl."), pursuant to Federal Rule of Civil Procedure 23(e), in support of: (a) this Court's final approval of the settlement of this class action and plan of allocation, which this Court preliminarily approved by Order dated April 27, 2004; and (b) the application of Plaintiffs' Lead Counsel for attorneys' fees and reimbursement of expenses.

## Introduction

1.    I am an associate with the law firm of Schiffrin & Barroway, LLP ("Schiffrin & Barroway"), Lead Counsel for the Lead Plaintiff and the Class (as defined below) in the above-styled action (the "Action"). I have been personally involved in the litigation and settlement of the Action. The information set forth in this Declaration is based on the personal knowledge I gained during the course of the Action and the settlement negotiations in the Action.

2.    This Declaration is submitted in support of the Court's consideration of: (a) the fairness, reasonableness and adequacy of the settlement of the Action (the "Settlement") and the proposed Plan of Allocation,[1] on the terms and conditions reflected in the Stipulation of Settlement, dated April 13, 2004 (the "Stipulation") (attached hereto as "Exhibit 1"); and (b) the application of Plaintiffs' Counsel for an award of attorneys' fees and reimbursement of expenses. Because this Declaration is submitted in support of a settlement, it is therefore privileged and inadmissible in any subsequent proceeding, other than in connection with the Settlement. This Declaration and the statements contained herein are without prejudice to Plaintiffs' position on the merits in the event that the Settlement is not approved by the Court.

---

[1] Unless otherwise noted, capitalized terms shall have those meanings contained in the Stipulation of Settlement.

2

## Terms of the Settlement

3.      As more fully disclosed in the Stipulation and the Notice of Pendency and Proposed Settlement of Class Action and Settlement Hearing Thereon (the "Notice") (attached hereto as Exhibit 1(A1)), which was mailed to 208,541 potential Class members pursuant to this Court's April 27, 2004 Order preliminarily approving the Settlement, *see* ¶ 9 of the Affidavit of Jack DiGiovanni, Director of Operations of The Garden City Group, Inc., the Claims Administrator in this Action (the "DiGiovanni Affidavit") (attached hereto as "Exhibit 2"), the Settlement provides for the payment of $7,250,000 in cash plus interest, less administrative costs, including the cost of Notice in both this case and the Derivative Action,[2] payment of taxes, and the award of attorneys' fees and expenses in both this Action and the Derivative Action, to members of the Class, pursuant to the terms of the Plan of Allocation.[3] Pursuant to the Stipulation, the Settlement has been funded and is presently held in an interest-bearing escrow account for the benefit of the Class.

---

[2] The Derivative Action, *Stern v. Ryan, et al.,* Case No. 03 C9079, has also been settled and the Gross Settlement Fund will provide for the payment of the costs of notice and attorneys' fees and reimbursement of expenses in that Action.

[3] The Proposed Class is defined as all persons who purchased or acquired the common stock of Aon during the period from May 4, 1999 through and including August 6, 2002, and are alleged by Lead Plaintiff to have suffered a loss thereby. Excluded from the Class are the Defendants and all present and former officers and/or directors of Aon, the members of the immediate families (parents, spouses, siblings, and children) of each of the individual defendants (Patrick G. Ryan and Harvey N. Medvin) each Defendant's legal representatives, heirs, successors or assigns and any entity in which any Defendant has had a controlling interest. Also excluded from the Class are any putative Class members who submit a request for exclusion in accordance with the requirements set forth in the Notice.

4.      Plaintiffs' Counsel, with the assistance and guidance of their experts, have estimated an average recovery under the Settlement of approximately $0.53 per share of damaged Aon common stock purchased during the Class Period (before the deduction of any Court-awarded fees and expenses). This estimate may further vary depending on the number of claims filed and the date on which the Class members purchased or sold their Aon common stock during the Class Period.

5.      The Settlement provides options for those who do not wish to participate in the Settlement, opt-out rights, and objection rights for those who do not believe that all aspects of the Settlement, including the Plan of Allocation and the request for an award of attorneys' fees and reimbursement of expenses, are fair, reasonable and adequate. Upon approval of the Settlement, the Action shall be dismissed with prejudice, subject to the terms of the Stipulation and Order and Final Judgment. For the reasons set forth below, the terms of the Settlement and Plan of Allocation are fair, reasonable and adequate in all respects and, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), should be approved by this Court.

### Background Regarding the Parties and Claims Asserted in this Action

6.      The Lead Plaintiff and the other Class members purchased Aon common stock during the Class Period and were allegedly damaged thereby.

7.      At the time that Plaintiffs filed this Action, Defendant Aon was headquartered at 200 East Randolph, Chicago, Illinois. Aon is an insurance holding company, comprised of three principal operating segments: Insurance Brokerage and Other Services, Underwriting and Consulting.

8. Defendant Patrick G. Ryan has been the Chairman of Aon's Board and its Chief Executive Officer since 1990 and 1982, respectively. He helped create Aon in 1982 when Combined International Corporation and the Ryan Insurance Group, a company founded by Ryan, merged.

9. Defendant Harvey N. Medvin has been Aon's Chief Financial Officer ("CFO") and Executive Vice President since 1982.

10. Plaintiffs alleged in this Action that the Defendants knew or recklessly disregarded that the false and/or misleading statements and omissions complained of in the Complaint adversely affected the integrity of the market for the Company's stock and caused the price of the Company's common stock to become artificially inflated. Plaintiffs alleged further that each of the Defendants acted knowingly, or in such a reckless manner and: (i) deceived the investing public regarding the Company's business, operations, management and the intrinsic value of Aon common stock; (ii) enabled Aon to acquire three companies using hundreds of millions of dollars of its artificially inflated common stock as currency; and (iii) caused Lead Plaintiff and other members of the Class to purchase or otherwise acquire Aon common stock at artificially inflated prices.

11. Plaintiffs have specifically alleged that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder, by misrepresenting and concealing that, *inter alia*: (i) Aon was having difficulty implementing a comprehensive "Business Transformation Plan" and that the plan was in fact costing, rather than saving the Company money; (ii) Aon's undisclosed efforts to cut costs in its underwriting department resulted in increased pay-outs, the loss of customers, and decreases in revenue; and (iii) Aon's revenue recognition policies were not in conformity with GAAP, enabling Aon to, *inter alia*, prematurely recognize $50-80 million annually in bonuses from insurance carriers.

5

12. More specifically, following a $4.5 billion acquisition and expansion campaign during the 1990's, Aon appeared on the verge of leading the insurance brokerage market. Indeed, Defendants touted the expansion at the outset of the Class Period, May 4, 1999, when Aon issued a press release announcing financial results for the first quarter of 1999, the period ending March 31, 1999. For the quarter, Defendants reported total revenue was up 9% from $1.6 to $1.7 billion, and net income was $50 million. The announcement caused Aon's stock price to rise.

13. Unbeknownst to investors, however, Aon's rapid expansion resulted in operating inefficiencies and competing corporate cultures that caused Aon's expenses to rise and profitability to decline.

14. In response, Defendants engaged in the following covert schemes to compensate:

- Aon management instructed its underwriting segment to "short-cut" traditional quality control measures in an effort to cut rising expense levels. The undisclosed measure backfired and resulted in an increase in pay-outs by Aon's carrier clients and the exodus of Aon's carrier client base. With no mention of the scheme and loss of business, Aon claimed that its underwriting segment was achieving strong organic revenue growth;

- despite universal warnings from Aon employees, Defendants implemented a $330-plus million Business Transformation Plan to address rising expenses. Unbeknownst to investors, the Plan alienated employees and clients from the Company in droves, cost Aon more than anticipated, resulted in little cost savings and eventually was overhauled. Notwithstanding the Plan's failings, Defendants repeatedly represented that it was on track, performing well and would save Aon between $150-$200 million annually;

- Defendants committed various accounting violations to increase Aon's reported revenue, yet continually represented that its financial statements were prepared in accordance with GAAP. For example, according to several former employees, Aon prematurely recognized $50-$80 million annually in carrier bonuses to make their annual numbers.

6

15.     The Class Period ends on August 7, 2002, when Aon reported that the Company had its "worst" financial quarter in Aon's history and announced, among other things, that: (a) Aon missed earnings expectations for the second quarter by 100% as a result of decreased margins and increased expenses; (b) Aon was cancelling a spinoff of its insurance underwriting businesses to shareholders; and (c) the SEC had begun an investigation of Aon's accounting and was questioning several items, including Aon's delayed reporting of a potentially unrecoverable $90 million reinsurance receivable, which the Company was later forced to restate. Following the announcement on August 7, 2002, shares of Aon common stock fell $6.43 per share to close at $14.77 per share -- a one-day decline of over 30%.

### History of the Action

16.     Plaintiffs filed the Complaint in the United States District Court for the Northern District of Illinois, Eastern Division, on August 8, 2002. The Complaint generally alleges that throughout the Class Period, May 4, 1999 through and including August 6, 2002, Defendants issued materially false and misleading financial statements regarding Aon's financial condition. The Court appointed Caldwell & Orkin, Inc. as Lead Plaintiff, and appointed Schiffrin & Barroway, LLP as Lead Counsel. The Court appointed Miller Faucher & Cafferty, LLP, as Liaison Counsel.

17.     On January 17, 2003, Plaintiffs filed the consolidated, amended class action complaint (the "Complaint"): *Taubenfeld v. Aon,* Case No. 02cv 5631, alleging the Class Period of May 4, 1999 through and including August 6, 2002, and asserting that Defendants violated §§10(b) and 20(a) of the Exchange Act, and Rule 10b-5.

18.     On April 4, 2003, Defendants moved to dismiss the Consolidated Securities Action in its entirety. Plaintiffs filed their opposition to Defendants' motion on June 2, 2003. This motion

7

was pending at the time that the Parties entered into the within Settlement.

## Factual Investigation and Discovery Conducted

19.   Plaintiffs' Counsel conducted a thorough and efficient investigation and analysis of the Class' claims.  The investigation conducted by Plaintiffs' Counsel included,   *inter alia,* (i) inspection and analysis of approximately 4000 pages of documents produced by Defendants; (ii) consultation with experts; (iii) review of public filings, annual reports, and other public statements; (iv) researching the applicable law with respect to the claims asserted in the Complaint and the potential defenses thereto; and (vi) interviews of:  (a) Ross Smith, President and CEO of K&K Insurance Group, Inc., a wholly-owned subsidiary of Aon, a provider of specialty insurance, since 2000; (b) Dan Hunger, Aon's Controller since January 2004; ©) Bill Chromisky, Vice President of SEC and internal reporting for Aon; and (d) Bob Bondi, Managing Principle of Aon Client Services. During the interviews, Plaintiff's Lead Counsel questioned Defendants' witnesses extensively regarding, *inter alia*: i) the Business Transformation Plan, its inception and implementation, and its affect on the Company; (ii) Aon's Class Period Underwriting practices and procedures; (iii) Aon's Class Period acquisitions of other companies; (iv) Aon's Class Period revenue recognition and reporting practices; and (v) the 2002 SEC investigation.

## Settlement Negotiations

20.   Over the course of many months, the parties engaged in serious settlement negotiations.  During that time, Counsel for both sides maintained significantly different positions as to Defendants' liability and Class damages, and continued to strenuously disagree on the amount of an acceptable settlement and the substantive terms of any settlement. Defendants maintained that, *inter alia*, they portrayed to the investing public an accurate view of Aon's finances; undertook the

8

Business Transformation Plan in good faith; did not suffer any unusual business pressures as a result of the pre-Class Period acquisitions campaign; properly executed Aon's underwriting due diligence practices; and conformed their revenue recognition policies to GAAP and that Plaintiffs had not suffered any damages. After each party had a full opportunity to hear and evaluate the position of the other, the parties were able to reach a formal settlement which is fair, reasonable and adequate to the Class. The principal terms of this Settlement are embodied in a Memorandum of Understanding dated November 6, 2003.

21.     On April 27, 2004, this Court signed the Preliminary Order In Connection With Settlement Proceedings which preliminarily approved the Settlement as set forth in the Stipulation.

### Analysis of the Factors Affecting Settlement

22.     The Settlement is the result of serious negotiations between experienced counsel who have concluded that the Settlement is fair, reasonable and adequate and should be approved by the Court. The Settlement avoids the risks involved in continued complex, costly, and extended litigation, the dangers of dispositive motions including motions to dismiss and summary judgment, trial and the inevitable post-trial appeals. The Settlement, which is substantial, also provides an immediate benefit to the Class, less than two years after the filing of the Action. The significant risks involved in taking this case further in litigation, and possibly on to trial, justify this Settlement.

23.     The pertinent criteria for evaluating the fairness of a proposed class action settlement in this Circuit include the following factors: (1) the strength of plaintiffs' case on the merits, balanced against the amount offered in settlement; (2) the ability of defendants to withstand a greater judgment; (3) the complexity, length, and expense of further litigation; (4) the presence of any collusion in reaching the settlement; (5) the reaction of members of the class to the settlement; (6)

9

the opinion of competent counsel; (7) the stage of the proceedings and the amount of discovery completed; and (8) the public interest. Based on an analysis of these factors, the terms of the Settlement and Plan of Allocation before the Court are fair, reasonable and adequate, and should be approved.

24.     When considering the first factor, the Court should consider that although Plaintiffs believe that the case could survive Defendants' dispositive motions, they are aware that difficult issues of law and fact exist, and Plaintiffs submit that the form of relief provided by this Settlement is properly balanced against the ultimate likelihood of success on the merits. Plaintiffs allege violations of section 10(b) of the 1934 Act, Rule 10b-5 promulgated thereunder, and section 20(a) of the 1934 Act. To prevail on such claims, the Class must show that Defendants made misstatements or omissions of a material fact with scienter in connection with the sale or purchase of securities. The Class has alleged, in particular, that Defendant Aon failed to portray to the investing public an accurate picture of its finances, its ability to integrate acquired companies, the success, or lack of success of its Business Transformation Plan and overstated its revenue in violation of GAAP, and Aon's accounting policy. Plaintiffs have alleged that Defendants acted with knowledge, or reckless disregard, that the information they were communicating to the investing public was materially inaccurate, and that the Defendants purposefully sought to inflate the value of Aon common stock.

25.     In particular, with respect to the risks of establishing liability, Defendants likely would present, *inter alia*, the following defenses:  (a) that Defendants' statements were not materially false and misleading;  (b) Defendants' statements were inactionable forward-looking statements and immaterial puffery; ©) that Defendants portrayed to the investing public an accurate

10

view of Aon's finances; (d) that Aon undertook and implemented the Business Transformation Plan in good faith; (e) that Defendants did not conceal the effects of Aon's pre-Class Period acquisitions; (f) that Aon conformed its revenue recognition policies to GAAP; (g) that Plaintiffs' failed to adequately plead scienter; and (h) that the Individual Defendants were not motivated to commit fraud as they possessed and retained large holdings in the Company. Although Plaintiffs were confident that the Complaint was sufficient to withstand a motion to dismiss, Plaintiffs believe, based on their factual investigation, including the interviews referenced in ¶ 19, that they may not have adduced sufficient evidence to withstand a motion for summary judgment.

26.    As a result, the Class members faced the expense, risks and delay of the trial of a complex action, including the risk that the Actions might be dismissed at the pleading stage, the summary judgment stage or following a trial on the merits. Further, even if the Plaintiffs ultimately prevailed at trial on all liability issues, the final assessment of damages could be such that the potential rewards in continuing this litigation were greatly outweighed by the potential risks.

27.    After extensive fact discovery, Plaintiffs' Lead Counsel, with the assistance of their experts, analyzed the liability and damages issues presented in this Action. Inherent in this analysis was evaluating the likelihood that the Class could ultimately prevail. Plaintiffs' Lead Counsel also considered the fact that even if the Class could recover a larger judgment after trial (which is questionable in light of the factual questions surrounding liability and the nature and extent of Class damages in the Action), the additional delay through trial, post-trial motions and the appellate process could deny the Class any recovery for years in the event the Settlement is not approved.

28.    Further, Plaintiffs also faced the considerable risk of establishing damages. Plaintiffs' Lead Counsel would be required to prove that Defendants' false and misleading statements inflated

the price of Aon's common stock, and would also be required to prove the amount of the artificial inflation. The presentation of such evidence, *i.e.*, market causation and damages, is a complex matter, which would require the presentation of expert testimony. In addition, the major stock decline during the Class Period that was associated with Defendants' curative disclosure was the August 7, 2002 decline, which was primarily associated with the announcement that the SEC was investigating the Company – an investigation that, for the most part, cleared Aon of any perceived wrong-doing. As a result, a large percentage of the Class could be found not to have suffered any damages. While Plaintiffs' Lead Counsel believe that their experts would provide convincing expert testimony on these matters, the inevitable battle of the experts is costly, and a favorable outcome is not guaranteed. This factor therefore also militates in favor of the Settlement.

29.     With respect to the second factor, Plaintiffs have no reason, based on the information in Lead Counsel's possession, to believe that the Defendants could not withstand a greater judgment. Courts, however, have not found the ability of a defendant to withstand a greater judgment to be an impediment to settlement when the other factors favor the settlement.     *See, e.g., D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

30.     The third factor, the complexity, expense, and likely duration of the litigation, also supports the Settlement. Although the Lead Plaintiff and its counsel believe that the Complaint would withstand Defendants' motion to dismiss, they are aware that there are very difficult issues of law and fact and the case may not ultimately withstand the test of summary judgment. The claims advanced by the Class involve numerous complex legal and financial issues, requiring extensive additional expert testimony, which would add considerably to the expense and duration of the litigation. Even at this point, after which Plaintiffs have undertaken confirmatory fact discovery,

12

questions remain regarding the extent of Defendants' liability.

31.    In addition, the fourth factor also favors the Settlement as all negotiations were conducted at arms' length and in good faith, and no facts exist demonstrating that there is any reason for the Court to believe that the negotiations were anything but non-collusive.

32.    The fifth factor, the reaction of the Class members, also militates in favor of this Settlement.  The deadline for filing objections was July 5, 2004, and the deadline to request exclusion was July 5, 2004.  Only *one* Class member has submitted an objection.  (*See* Objection of Hannah Feldman (Attached hereto as "Exhibit 5").  This objection, submitted by Class member Hannah Feldman, asserts that she, and other members of the Employee Stock Purchase Program, did not receive Notice through the Notice program.  Ms. Feldman was, however, sent Notice.  *See* DiGiovanni Affidavit at ¶ 5; *See also* Affidavit of Phyllis Garland, Relationship Manager at Computershare Plan Managers, the administrator of Aon's Employee Stock Purchase Plan (Attached hereto as "Exhibit 4," at ¶ 7-8).  Therefore, the factual basis of Ms. Feldman's objection is inaccurate and this Court should not consider her objection in its evaluation of the Settlement.

33.    Furthermore, in the judgment of counsel, the proposed Settlement is fair, adequate, and reasonable.  By the time the parties entered into the proposed Settlement, Plaintiffs' Counsel had ample information to understand the issues in the case and to evaluate the strengths and weaknesses of the claims of the Class.  This information was gained through briefing of the motions to dismiss, Defendants' production of documents and four witnesses for interviews during confirmatory discovery, as well as through the settlement negotiations.  Likewise, as set forth in great detail in Plaintiffs' Memorandum in Support of the Settlement, Plaintiffs' Counsel had the information necessary to evaluate the merits of Defendants' case with respect to both liability and damages.

13

34.     Finally, settlement of the action is in the public interest because it spares the parties,

other litigants with matters before this Court, this Court and citizens whose taxes support the court

system, the burden of litigation and trial. For this reason, as well as the other reasons set forth above,

Plaintiffs submit that the Settlement is fair, reasonable, and adequate.

### The Plan of Allocation

35.     The proposed Plan of Allocation (the "Plan"), as contained in the Notice, sets forth

how the Settlement Fund (less the costs of Notice and administration of the Settlement and fees and

costs as may be awarded by the Court, the "Net Settlement Fund"), shall be distributed to Authorized

Claimants.[4]  Plaintiffs' Counsel prepared the Plan after careful, prolonged consideration with

Plaintiffs' damages consultant.

36.     The Plan was fully disclosed in the Notice of Proposed Settlement, which was sent

to 208,541 potential Class members. DiGiovanni Aff. ¶ 9. As of the filing of the instant motion,

there have been no objections to the Plan of Allocation. The Loss Amounts under the Plan are based

on the estimated level of alleged artificial inflation in the price of Aon common stock, as determined

by Plaintiffs' Counsel in consultation with a damages consultant. Differences in treatment of Class

members are made solely with respect to the timing of such transactions. Recognized losses will

depend on when Class members made their purchases or sales of the common stock. If the total

recognized losses for all Authorized Claimants exceeds the Net Settlement Fund, each Authorized

Claimant's share of the Net Settlement Fund will be determined based upon the percentage that his

---

[4]Authorized Claimants are defined in the Notice of Proposed Settlement as Class
members, who are otherwise not excluded, who timely submit valid Proof of Claim forms.

or her recognized loss bears to the total recognized losses for all Authorized Claimants. Plaintiffs'

Counsel believes that this method of allocation is fair, reasonable and adequate.

### The Reaction of the Class to the Settlement

37.     Notice of this proposed Settlement, in substantially the form approved by the Court,

was mailed to approximately 208, 541 potential Class members commencing on May 21, 2004, and

published in the national edition of *The Wall Street Journal* on May 25, 2004. *See* DiGiovanni Aff.

¶¶ 7, 9. The Notice advised Class members that Plaintiffs' Counsel intended to apply to the Court

for an award of attorneys' fees representing up to one-third of the Settlement Fund (Plaintiffs'

Counsel seeks only 30%) and for reimbursement of Plaintiffs' Counsel's actual out-of-pocket

expenses of approximately $100,000 (Plaintiffs' Counsel seeks $111,054.06).[5] Class members had

until July 5, 2004, to object. As of the date preceding filing of the instant motion, only one Class

member has filed an objection.[6] As stated above in ¶ 32, this objection has no basis in fact.

### Attorneys' Fees and Costs

38.     Plaintiffs' Counsel respectfully requests a fee award, including interest at the same

rate as that earned by the Class, of 30% of the Gross Settlement Fund; and (b) reimbursement of

expenses totaling $111,054.06. As set forth in Plaintiffs' Memorandum in Support of Plaintiffs'

---

[5] Of the expenses requested for reimbursement, $89,704.10 is attributable to work performed by Plaintiffs' Lead Counsel and Plaintiffs' Liaison Counsel, and is reflected in the Affidavit of Marvin Miller attached hereto as "Exhibit 3." The remaining $21,349.96 is attributable to work performed by other Plaintiffs' Counsel. Supporting documentation for those remaining expenses will be produced upon the Court's request.

[6] Forty-two Class members have requested exclusion. In the face of 208,541 potential Class members having received Notice, this number is not significant. The exclusion requests themselves are attached to the DiGiovanni Aff. as "Exhibits D and E," and a list of the persons requesting exclusion is attached to the Final Order as "Exhibit A."

Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Expenses, this request is consistent with established precedent in this District and throughout the Seventh Circuit, as well as in federal courts throughout the country, as fee awards equal to or in excess of the requested fee of 30% have been consistently awarded in securities class actions to plaintiffs' counsel working on a contingent fee basis and obtaining a common fund for the benefit of the class.

39.     Courts in the Seventh Circuit evaluate a plaintiff's counsel's request for attorneys' fees according to whether the request is reasonable, relying on the following five factors for guidance: (1) the contingent nature of the case; (2) the quality of the legal services rendered; (3) the benefits derived by the class; (4) the public service aspects of the case; and (5) how far the litigation proceeded prior to settlement.

40.     As discussed more fully above and in the accompanying Memorandum of Law, Plaintiffs' Counsel undertook their investigations of these complex issues without any assistance from any federal investigations. In addition, Plaintiffs' Counsel undertook all of the risks of this Action on a contingent fee basis -- the risks of surviving dispositive motions, obtaining certification, proving liability, prevailing in the "battle of the experts," winning at trial, and surviving post-trial motions and appeals -- at the same time that they faced the significant risk that they would litigate this case for years, expend many thousands of hours of work, at great expense, and never be paid.

41.     The quality of the representation in these Actions also supports the requested fee. Plaintiff's Lead Counsel, Schiffrin & Barroway, is one of the most accomplished plaintiffs' securities law firms in the country. This Court has itself recognized that Schiffrin & Barroway litigates its cases with "professional skill and standing." *See Henry v. Sears, Roebuck & Co.,* 98 C 4110, 1999 U.S. Dist. LEXIS 13831, *5-6 (N.D. Ill. August 27, 1999) (Leinenweber, J.);    *see also In re*

16

*AremiSoft Corp.*, 210 F.R.D. 109, 121 (D.N.J. 2002) (noting Schiffrin & Barroway is highly experienced in securities class actions, and have demonstrated "their expertise in this matter via their ability to proceed efficiently and professionally . . ."). In addition, Schiffrin & Barroway has been assisted by Miller Faucher & Cafferty, as liaison counsel, a firm whose expertise has also been recognized by this Court. *See Sebo v. Rubenstein*, 188 F.R.D. 310, 317 (N.D. Ill. 1999) (Lindberg, J.) ("Miller Faucher is experienced in antitrust class action litigation and defendants do not dispute that they are 'competent, qualified, experienced and able to vigorously conduct the litigation.'") (citation omitted); *see also In re Telesphere International Inc. Sec. Lit.*, 753 F. Supp. 716, 719 (N.D. Ill. 1990) (Shadur, J.) (Marvin A. Miller is "an experienced securities law class action litigator...who has 20 [now 34] years of practice under his belt. The Court has seen the quality of that lawyer's work in other litigation, and it is first-rate."). Without the experience of these lawyers, this advantageous Settlement could not have been achieved this early in the litigation.

42. The Settlement provides a substantial benefit to the Class, $7,250,000, less than two years after the filing of the Complaint. This recovery is even greater when viewed in the context of the likelihood that Plaintiffs, though they may have prevailed at the motion to dismiss stage, faced a strong possibility that Defendants' defenses would have been born out in discovery and that Plaintiffs' claims would have been dismissed at the summary judgment stage, or following a lengthy trial. In particular, Defendants would have produced witnesses to support the defense that Defendants' lacked scienter, and that the Class Period statement concerning the Company were viewed as accurate when made.

43. In addition, society has a meaningful stake in encouraging attorneys who undertake cases like the instant matter because without attorneys willing to take on these massive class actions,

17

the majority of the injured Class members will go without a remedy. Plaintiffs' Counsel undertook this case on a contingency basis and without the assistance of an SEC or other government investigation. Plaintiffs' Counsel shouldered the risk of committing substantial resources to the litigation of this Action, and of working long hours in a heavily contested matter, notwithstanding significant uncertainty as to whether the action would ultimately succeed. As set forth in Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Final Approval of the Settlement and Plan of Allocation, this matter presents many complex issues of liability and damages, and to obtain a Settlement of the magnitude obtained here, required the skill, professionalism, and experience of Plaintiffs' counsel.

44.    Plaintiffs' Counsel also requests reimbursement of out-of-pocket expenses incurred to date in connection with the prosecution of this action. These expenses include paying experts, consultants, photocopying of documents, online research, messenger services, postage, express mail and next day delivery, long distance telephone and facsimile expenses, transportation, meals, travel and other incidental expenses directly related to the prosecution of this action. The aggregate expenses for which reimbursement for Plaintiffs' Counsel is sought is $111, 054.06. (See Exhibit 3 attached hereto). No objections were received regarding the expense figure.

I hereby declare that the foregoing is true and correct.


DATED: _July 21_, 2004


_Kay E. Sickles_
Kay E. Sickles


18

# SEE CASE FILE FOR EXHIBITS